**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| PREMIER SPECIALTY BRANDS LLC, d/b/a KAMADO JOE, | ) ) ) | |
| Plaintiff/Counter-claim Defendant, | ) ) | |
| v. | ) ) | Case No. 1:20-cv-04949-ELR JURY TRIAL DEMANDED |
| PHASE 2, LLC, | ) ) ) | |
| Defendant/Counter-claim Plaintiff. | ) ) | |

<u>**PHASE 2, LLC'S OPENING CLAIM CONSTRUCTION BRIEF**</u>

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...........................................................................................1

II.   LEGAL STANDARDS ..................................................................................2

     A.    Claim Construction Generally ............................................................2

     B.    Determining Whether a Claim Term is a "Means Plus Function" Limitation ........5

III.  LEVEL OF ORDINARY SKILL IN THE ART ............................................6

IV.   TECHNICAL BACKGROUND AND THE PATENT-IN-SUIT ...................6

     A.    The '626 Patent ...................................................................................6

     B.    The Asserted Claims ...........................................................................9

     C.    The Prosecution History of the '626 Patent .....................................11

V.    THE PROPER CONSTRUCTION OF THE DISPUTED CLAIM TERMS ..................12

     A.    "During Cooking" .............................................................................12

     B.    "Fire Bowl" .......................................................................................15

     C.    "adapted to be spaced inwardly from the lower shell" .....................17

     D.    "removable unit" ...............................................................................18

     E.    "outer surface of the removable unit," "at least one opening," and "opening for providing airflow into the lower shell" ..........................20

     F.    "external grip for slidably removing the removable unit from the grill" .............22

     G.    "a surface for receiving the removable unit which abuts a surface of the removable unit when the removable unit is in a closed position," "beneath a vent cover," "to cover or expose at least one portion of the at least one opening" ...................24

VI.   CONCLUSION .............................................................................................25

APPENDIX A.................................................................................................. A-1

# TABLE OF AUTHORITIES

**Cases**

*AK Steel Corp. v. Sollac and Ugine*, 344 F.3d 1234 (Fed. Cir. 2003) ..........................................19

*CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359 (Fed. Cir. 2002) .....................................14

*Cont'l Cirs. LLC v. Intel Corp.*, 915 F.3d 788 (Fed. Cir. 2019) .................................................3, 4

*Epistar Corp. v. Int'l Trade Comm'n,* 566 F.3d 1321 (Fed. Cir. 2009)...................................3, 22

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004)..........................................4

*Mass. Inst. of Tech. v. Abacus Software,* 462 F.3d 1344 (Fed. Cir. 2006)..................................14

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005).......................................................passim

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296 (Fed. Cir. 2011)............3, 22

*RF Del., Inc. v. Pac. Keystone Techs., Inc.*, 326 F.3d 1255 (Fed.Cir. 2003) ...............................19

*Samsung Electronics America v. Prisua Engin'g Corp.*, 948 F.3d 1342 (Fed. Cir. 2020) .............6

*Thorner v. Sony Computer Ent. Am. LLC,* 669 F.3d 1362 (Fed. Cir. 2012) ..................................3

*U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554 (Fed. Cir. 1997).........................................20

*Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) ...............................................5

**Statutes**

35 U.S.C. § 112, ¶ 6 .....................................................................................................................5

**Other Authorities**

The America Invents Act ("AIA"), Pub.L. No. 112-29 ..................................................................5

## I.      INTRODUCTION

The Asserted Claims of U.S. Patent No. 10,299,626 ("the '626 patent") are straightforward and easily comprehended both by a person of ordinary skill in the art at the time of the invention ("POSITA") and by a lay person.  Counterclaim Defendant Premier Specialty Brands LLC's ("Premier") proffered constructions do not reflect the plain and ordinary meaning of the disputed claim terms.  Rather, Premier's constructions are transparent attempts to restrict the scope of the claims to specific embodiments in the specification in violation of long established precedent from the Supreme Court and the U.S. Court of Appeals for the Federal Circuit.

It is black-letter law that the claims of a patent define the invention and that importing limitations from the specification into the claims as Premier proposes is improper.  *See*, *e.g.*, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (*en banc*). These rules strike the proper balance between using specific embodiments to teach and enable a POSITA to make and use the invention without limiting the claims—*e.g.* the metes and bounds of the patents—to those specific embodiments.

Phase 2 respectfully submits that Premier's litigation inspired constructions are inconsistent with the plain and ordinary meaning of the claims and should be rejected.  Phase 2's constructions, on the other hand, do not import extraneous limitations and reflect the plain and ordinary meaning that a POSITA would have

attributed to the claims in light of the specification.   Accordingly, if the Court determines that any of the disputed claim terms actually require construction, then Phase 2 respectfully submits that the Court should adopt Phase 2's constructions.[1]

## II.   LEGAL STANDARDS

### A.   Claim Construction Generally

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips,* 415 F.3d at 1312 (internal citation omitted).   Claim terms generally should be given their plain and ordinary meaning, which "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention[.]" *Id.* at 1312-13. In cases where the "ordinary and customary meaning" is clear, claim construction involves "little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

There are only two exceptions to the general rule that claim terms are given their plain and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Computer*

---

[1] A summary of Phase 2's proffered constructions is included as Appendix A for the convenience of the Court.

*Ent. Am. LLC*, 669 F.3d 1362, 1364 (Fed. Cir. 2012).  "To disavow claim scope, the specification must contain **'expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope**.'"  *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1306 (Fed. Cir. 2011) (emphasis added) (quoting *Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1335 (Fed. Cir. 2009)).  Thus, absent "a clear and unmistakable disclaimer," the plain and ordinary meaning controls.  *Cont'l Cirs. LLC v. Intel Corp.*, 915 F.3d 788, 797 (Fed. Cir.), cert. denied, 140 S. Ct. 648 (2019).

A POSITA is "deemed to read [each] claim term … in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313. Courts consider the claims themselves because "the context in which a term is used in the asserted claim can be highly instructive," and "use of a term within the claim provides a firm basis for construing the term." *Id.* at 1314 (citation omitted).

Courts also look to the specification, which "is always highly relevant." *Id.* at 1315.  But while "the specification often describes very specific embodiments of the invention, [the Federal Circuit has] repeatedly warned against confining the claims to those embodiments." *Id.* at 1323.  Indeed, even where the specification discloses only a single embodiment, the Federal Circuit has "expressly rejected the contention [that] the claims of the patent must be construed as being limited to that

3

embodiment." *Cont'l Circuit*., 915 F.3d at 979 (quoting *Phillips*, 415 F.3d at 1323). *See also Liebel-Flarsheim Co. v. Medrad, Inc*., 358 F.3d 898, 906 (Fed. Cir. 2004) ("Even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" (internal citation omitted)).

"[A] court should also consider the patent's prosecution history, if it is in evidence." *Cont'l Circuits*, 915 F.3d at 796 (quoting *Phillips*, 415 F.3d at 1317). "Like the specification, the prosecution history provides evidence of how the United States Patent and Trademark Office ('PTO') and the inventor understood the patent." *Id*. (quoting *Phillips*, 415 F.3d at 1317).   The Federal Circuit has "cautioned, however, that 'because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes.'" *Id*. (quoting *Phillips*, 415 F.3d at 1317).

In addition to the intrinsic evidence noted above, Courts may also "rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" *Phillips*, 415 F.3d at 1317.  Although extrinsic evidence can be

useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'"  *Phillips*, 415 F.3d at 1317.

**B.     Determining Whether a Claim Term is a "Means Plus Function" Limitation**

Means-plus-function claiming occurs when a claim term is drafted in a manner that invokes 35 U.S.C. § 112, ¶ 6[2], which states:

> An element in a claim for a combination may be expressed as **a means or step for performing a specified function** without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112, ¶ 6 (emphasis added).

A claim limitation that does not use the term "means" carries with it a rebuttable presumption that § 112, ¶ 6 *does not* apply. *See, e.g., Phillips*, 415 F.3d at 1310.  Premier can overcome that presumption only "if [it] demonstrates that the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'"  *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015) (internal citation omitted).  The question of whether a challenged claim term invokes section 112, paragraph 6

---

[2]  The America Invents Act ("AIA"), Pub.L. No. 112-29, took effect on September 16, 2012.  Because the applications for the '626 patent were effectively filed before that date, the pre-AIA versions of §§ 102, 103 and 112 control here.

thus "depends on whether persons skilled in the art would understand the claim language to refer to structure, assessed in light of the presumption that flows from the drafter's choice not to employ the word 'means.'" *Samsung Electronics America v. Prisua Engin'g Corp.*, 948 F.3d 1342, 1354 (Fed. Cir. 2020).

## III.   LEVEL OF ORDINARY SKILL IN THE ART

Phase II submits that a POSITA would have at least a bachelor's degree in mechanical engineering and at least two-years of industry experience working in the field of designing and/or manufacturing barbecue grills for cooking or smoking food. A higher level of work experience could substitute for education and *vice versa*.

## IV.   TECHNICAL BACKGROUND AND THE PATENT-IN-SUIT

### A.   The '626 Patent

The '626 Patent generally relates to barbecue grills for cooking and/or smoking food and, more specifically, to charcoal barbecue grills. '626 Patent at 1:18-20.[3] Such grills are commonly available in a variety of configurations, such as kettle-style charcoal grills, barrel-style charcoal grills, and kamado-style charcoal grills. *Id.* at 1:35-38. The specific embodiments shown in the figures of the '626 patent are kamado-style grills. *Id.* at 5:21-24. Kamado-style grills are generally urn

---

[3] Citations to the '626 Patent (Exhibit 1) are to the column and line number. For example, a citation to the '626 Patent at 1:18-20 refers to column 1, lines 18-20.

shaped and constructed of clay or other insulating ceramic material.  This insulating effect allows an even cooking process while also being very fuel-efficient.

Figure 1 of the '626 patent shows an example of such a kamado-style grill:



As seen, this embodiment has a lower shell 112 and an upper shell 114 emphasized in red.  A "fire bowl 128," *e.g.* a "vessel configured to hold and burn charcoal for cooking food," is configured to fit inside the lower shell 112.  *See id*. at Abstract.

This embodiment further includes a vent system (blue references in Figure 1, above).  The "upper vent" of this vent system is identified with reference number 154 in Figure 1 shown above.  The "lower vent" can be located on a "removable unit" shown as reference 132 in Figure 1, above.  A "vent cover" over the lower vent is adjustable.  The further open the vent cover is, the more air can flow into the lower shell 112 via the "lower vent" and up through the grill to the "upper vent."  This configuration for the "lower vent" is shown in Figure 8:



Figure 5, reproduced immediately below, provides an exploded view of a kamado-style grill of Figure 1.



FIG. 5

The "removable unit" can be configured to collect the ash resulting from burning charcoal and/or wood in the fire bowl.  Unlike in prior art grills, the "ash drawer 132" of this embodiment in the '626 patent "eliminates [the] need to rake the ashes out of the base … as often required by previous grill designs."  *Id*. at 6:48-50. Indeed, the ashes can be removed from the grill via this ash drawer while the grill is still in use and hot coals remain in the fire bowl.

This "ash drawer" can slide into and out of an opening 134 in the lower shell. More specifically, the ash drawer is "configured to slide in a substantially horizontal

direction into and out of an opening" in the lower shell.  '626 Patent at 6:31-44. When slid into the opening in the lower shell, the "ash drawer" will be "located under the fire bowl to collect the ashes, with the fire bowl acting to funnel the ashes through a lower opening [in the fire bowl] into the ash drawer." *Id.*  The "ash drawer" further has an "external grip" that allows the user to remove the ash drawer from the grill to dispose of the collected ashes. *Id*. at 6:44-48.

### B.    The Asserted Claims

Phase 2 filed its Counterclaim on April 15, 2021 asserting that Premier's line of kamado grills that include an ash drawer infringe claims 1-5, 14, 16, 17, and 20-24 of the '626 patent.  Dkt. 13.  Claim 1, the only independent claim of the '626 patent, follows:

A grill comprising:

an upper shell;

a lower shell, the lower shell defining an opening there-through, the upper shell and the lower shell together defining a cooking chamber;

a fire bowl comprising side walls tapered inwardly at a lower portion of the fire bowl; the fire bowl being adapted to be spaced inwardly from the lower shell and supported above a bottom surface of the lower shell, and the lower portion of the fire bowl defining an opening there-through;

a removable unit sized to be slidably received through the opening in the lower shell to position at least one portion of the removable unit under at least one portion of the opening in the lower portion of the fire bowl, wherein an outer surface of the removable unit defines at least one opening for providing airflow into the lower shell during cooking.

9

'626 patent at 10:5-22.  Claim 2 requires that the "removable unit" of claim 1 be a "receptacle," and claim 3 further limits that receptacle to being an "ash drawer."  *Id.* at 10:23-26.

Claim 4 adds a "grate" to the limitations of claim 3.  That grate must be configured to hold a fuel source (*e.g.* charcoal or wood) and allow ashes to pass through the grate and be received by the ash drawer.  *Id.* at 10:27-31.

Claim 14 includes several individual elements *any one of which* must be met to be infringed.  The individual element of claim 14 at issue here is the one that requires the removable unit of claim 1 to include an "external grip for slidably removing the removable unit from the grill"—*i.e.* a part that the user can grasp to slide the removable unit out of the grill.  *Id.* at 10:65-67.

Claim 16 depends from claim 14 and similarly contains alternative individual elements with the one at issue here requiring that the "outer surface of the removable unit" define "at least one opening for providing airflow into the lower shell."  *Id.* at 10:20-23.  Claim 17 depends from claim 1 and requires a vent located on the upper shell of the grill and "positioned vertically above" an opening in the lower portion of the fire bowl. *Id.* at 11:15-18.

Claim 20 also depends from claim 1 and requires a support for the fire bowl. Claim 21 requires that the upper and lower shell of the grill of claim 1 be constructed

from clay, ceramic, refractory material, earthen material, cement rock, or terra cotta composition.

Claim 22 requires that:  (1) the fire bowl of claim 1 include a floor that defines an opening through the lower portion of the fire bowl; and (2) at least a portion of the removable unit be positioned under a portion of the opening in the floor of the fire bowl.  Claims 23 and 24 require, respectively, that the grill of claim 1 have two cooking surfaces and that one of those cooking surfaces be spaced above the other.

### C.    The Prosecution History of the '626 Patent

The application that issued as the '626 patent was filed on December 18, 2018.  Exh. 2.  That application was a continuation of other applications filed by the same inventors, all claiming priority back to a Provisional application filed on May 21, 2010.  *Id*. at 5-6.

On February 1, 2019, the examiner issued a non-final rejection, asserting that certain pending claims were anticipated by Scott (U.S. Pub. 2009/0308373) while others were invalid as obvious over Scott and Crawford (U.S. Pat. No. 6,827,076.)  *Id*. at 122-125.

The applicants responded to the February 2019 rejection by amending then-pending claim 19 to include limitations related to the "removable unit."  *Id*. at 156-157.  Applicants pointed out that Scott did not "describe or suggest a removable unit

sized to be slidably received through the opening in the lower shell ….”  *Id*.

Applicants further distinguished the application claims because Crawford does not

include an ash drawer that “include[s] at least one opening for providing airflow into

the lower shell during cooking.”  *Id*. at 159.  To the contrary, incorporating the ash

drawer of Crawford “in the opening behind the draft door 22 of Scott the ash drawer

would block the ventilation to the cooking chamber of Scott.”  *Id*.

The Applicants’ arguments regarding Scott and Crawford overcame the

rejection and on March 28, 2019, the examiner issued a Notice of Allowance.  *Id*. at

164-168.

## V.   THE PROPER CONSTRUCTION OF THE DISPUTED CLAIM TERMS

### A.   “During Cooking”

| Phase 2’s Proposed Construction | Premier’s Proposed Construction |
| --- | --- |
| No construction required.<br><br>Any proposed definition would simply be a reordering or restatement of plainly understood terms | Section 112(6) applies:<br><br>Function:  creating intended cooking conditions within the grill<br><br>Structure:  lower vent 166<br><br>If 112(6) does not apply:<br><br>Objectively functioning as claimed while grill is in use as intended |

Premier’s assertion that the phrase “during cooking” is a means-plus-function

claim element lacks merit.  Premier is improperly attempting to use Section 112(6)

to limit the claims to the specific embodiment of the "ash drawer 132" as depicted in Figure 1.  That embodiment, with the "lower vent 166" highlighted, is shown in the following figures from the '626 patent:



As explained in the '626 patent, the function of the "lower vent 166" is to allow airflow into the lower shell through the "lower vent" and up through the "upper vent 164" during cooking.  '626 Patent at 7:50-62.

Premier's proposed construction is betrayed by the pertinent claim language in which the phrase "during cooking" appears:

> an outer surface of the removable unit defines at least one opening for providing airflow into the lower shell ***during cooking.***

13

The words "during cooking" are thus a condition, not a function to be performed, and so Section 112(6) does not apply.  Premier's attempt to limit the proper scope of claim 1 should be rejected for this reason alone.

Further, this term "is presumptively not subject to 112 [paragraph] 6 because it does not contain the term 'means.'" *Mass. Inst. of Tech. v. Abacus Software*, 462 F.3d 1344, 1353 (Fed. Cir. 2006) (quoting *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1369 (Fed. Cir. 2002)).  Premier cannot overcome this presumption.  As stated above, "during cooking" is not a function.  The only perceivable "function" recited in the pertinent claim language is providing airflow into the lower shell.  But the claim already provides the structure to perform this airflow function.  To wit, the underlined language in the following quote from claim 1 is the structure that performs the italicized function of providing airflow into the lower shell:

> an outer surface of the removable unit [that] defines an at least one opening *for providing airflow into the lower shell* during cooking."

It would be improper to require a "lower vent" through the construction of the claim term "during cooking" when the vent is already required by the earlier (underlined) claim language quoted immediately above.

Premier's alternative, non-means plus function construction—"objectively functioning as claimed while grill is in use as intended"—fares no better.  It would serve only to make the claim confusing to the jury.  What follows is the full limitation

14

of claim 1 with Premier's alternative construction for the phrase "during cooking" substituted and underlined:

> an outer surface of the removable unit defines at least one opening for providing airflow into the lower shell ~~*during cooking*~~ <u>objectively functioning as claimed while grill is in use as intended</u>

It follows that the proposed construction is nonsensical and does not clarify the scope of the claim.

A POSITA, and the jury, would readily understand the scope of the claim term "during cooking" without any construction.   Accordingly, Phase 2 respectfully submits that no construction is necessary for this claim term.

**B.** **"Fire Bowl"**

| Phase 2's Proposed Construction | Premier's Proposed Construction |
|---|---|
| No construction required.<br><br>If the Court determines that a construction is necessary, the term should be given its plain and ordinary meaning:<br><br>"a vessel configured to hold charcoal or wood" | "A bowl shaped structure separable from the body of the grill having an inner surface capable of retaining fuel therein and also having an outer surface" |

Premier's proffered construction unnecessarily replaces the term "bowl" with "a bowl shaped structure."   Further, Premier's construction improperly seeks to inject numerous limitations that are not included in the claim and that are not required to understand the meaning of "fire bowl."

The characteristics of a "bowl" are well-known and readily understood. Webster's dictionary defines "bowl" as "a rather deep, round dish or basin, used for holding liquid, food, etc." Exh. 3 at 3. This definition is consistent with the usage of the term "fire bowl" in the '626 patent. *See* '626 Patent at, *e.g.*, 6:15-19.

Moreover, the parties essentially agree that the "bowl" in claim 1 can be used to hold fuel (*i.e.* charcoal or wood) during cooking. This, too, is consistent with the '626 patent's description of the embodiment shown in Figures 5-7:

> With reference now to FIGS. 5-7, the illustrated charcoal grill 100 also includes a fire bowl 128 configured to be disposed within the vessel 102 and **configured to hold charcoal** in the vessel 102 (and allow the charcoal to burn) for use in cooking food.

*Id*. (emphasis added).[4] *See also id*. at Abstract ("A charcoal grill includes **a vessel configured to hold and burn charcoal for cooking food**.") (emphasis added). Accordingly, if the Court determines that "fire bowl" requires construction, the term should be given its plain and ordinary meaning: **a vessel configured to hold charcoal or wood.**

The additional terms that Premier seeks to inject (*e.g.* "separable from the body of the grill," "an inner surface" and "an outer surface"), however, are not found

---

[4] The '626 patent explains that "as used herein, the term 'charcoal' should be understood to include wood." *Id*. at 4:18-19.

in the claim.  And there is no disavowal of the plain and ordinary meaning of the term "fire bowl" in the specification that would justify injecting additional limitations as Premier requests.  Premier's construction should therefore be rejected.

### C.     "adapted to be spaced inwardly from the lower shell"

| Phase 2's Proposed Construction | Premier's Proposed Construction |
|---|---|
| No construction required.  If the Court determines that a construction is necessary, the term should be given its plain and ordinary meaning:  "designed to be situated inside" | Intended to be spaced inside of the inner surface of the inner wall of the lower shell |

This limitation of claim 1 of the '626 patent requires that "the fire bowl" be "adapted to be spaced inwardly from the lower shell."  '626 Patent at Claim 1.  This claim language, again, is readily understandable and requires no construction.

Indeed, the parties' respective positions on this claim term are largely consistent.  Both constructions require that the "fire bowl" is "situated inside" or "spaced inside" the lower shell.  This is consistent with the plain and ordinary meaning of the term "inwardly."  *See* Exh. 3 (Webster's dictionary) at 4 ("Inwardly: in or on, or with reference to, the inside or inner part; internally").

But Premier's proffered construction seeks to add extraneous words that are unnecessary to clarify the meaning of the disputed claim language.  Specifically, Premier's construction requires an "<u>inner surface</u> of the <u>inner wall</u> of the lower shell."  These additional limitations are not in the actual claim language and there is no basis in the intrinsic record to inject them as Premier requests.

Accordingly, Phase 2 respectfully submits that, if the Court determines this claim term requires construction, then the Court should adopt Phase 2's construction because it reflects the plain and ordinary meaning of the term:  "**designed to be situated inside**."

### D.    "removable unit"

| Phase 2's Proposed Construction | Premier's Proposed Construction |
|---|---|
| No construction required.<br><br>If the Court determines that a construction is necessary, the term should be given its plain and ordinary meaning:<br><br>"a piece that can be removed" | A unitary box for collecting and/or cleaning ashes from the grill that may be separated from the grill |

The term "removable unit" appears in the following limitation of claim 1 of the '626 patent:

a ***removable unit*** sized to be slidably received through the opening in the lower shell to position at least one portion of the removable unit

18

> under at least one portion of the opening in the lower portion of the fire
> bowl, wherein an outer surface of the removable unit defines at least
> one opening for providing airflow into the lower shell during cooking

'626 Patent at Claim 1.   Dependent claim 2 limits the "removable unit" to a "receptacle."  *Id.* at Claim 2.  The parties agree that "receptacle" as used in claim 2 means "a piece configured to receive and contain something."   Dkt. 39 at 1. Dependent claim 3 further limits the "receptacle" of claim 2 to an ash drawer.  '626 Patent at Claim 3.

Premier's proffered construction of "removable unit" seeks to impermissibly limit claim 1 to the ash drawer of dependent claim 3 in violation of the doctrine of claim differentiation.  "Under the doctrine of claim differentiation, dependent claims are presumed to be of narrower scope than the independent claims from which they depend."  *AK Steel Corp. v. Sollac and Ugine*, 344 F.3d 1234 (Fed. Cir. 2003), *citing RF Del., Inc. v. Pac. Keystone Techs., Inc*., 326 F.3d 1255, 1264 (Fed.Cir. 2003) (stating that an independent claim is usually accorded a scope greater than its dependent claims).  Premier's narrowing construction of "removable unit" should therefore be rejected.

The term "removable unit" is sufficiently clear and no construction of this term is necessary.  If the Court nevertheless determines that "removable unit"

requires construction, then Phase 2 respectfully submits that the Court should adopt

Phase 2's construction: "**a piece that can be removed**."

     E.     **"outer surface of the removable unit," "at least one opening," and "opening for providing airflow into the lower shell"**

| Claim Term | Premier's Proposed Construction | Phase 2's Proposed Construction |
|---|---|---|
| "outer surface of the removable unit" | No construction required. Any proposed definition would simply be a reordering or restatement of plainly understood terms. | An exterior boundary of the removable unit situated outside of the lower shell |
| "at least one opening" | No construction required. Any proposed definition would simply be a reordering or restatement of plainly understood terms. | An aperture through the width of the outer surface of the removable unit |
| "opening for providing airflow into the lower shell" | No construction required. Any proposed definition would simply be a reordering or restatement of plainly understood terms. | An aperture through the width of the outer surface of the removable unit that supplies air from outside the grill and into the lower shell during cooking. |

     This claim language as a whole is, again, readily understandable and does not

need clarification via claim construction.  Terms such as "outer surface," "opening"

and "into the lower shell" are ones that would be readily understood by a POSITA

and the jury.  Accordingly, they need not be construed by the Court.  *See*, *e.g. U.S.*

*Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim

construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy.").

That these terms require no construction is even clearer when viewed in the full context of the claim.  What follows is the full claim limitation with the three phrases for which Premier requests construction underlined:

> wherein an <u>outer surface of the removable unit</u> defines <u>at least one opening</u> <u>for providing airflow</u> into the lower shell during cooking.

The word "opening" in the above quoted claim element is emphasized as it appears in two of the phrases that Premier asserts require construction ("at least one opening" and "opening for providing airflow…").

In short, the plain language of this claim element simply requires that:  (1) the removable unit have an outer surface; and (2) the outer surface of the removable unit has at least one opening for providing airflow into the lower shell during cooking. The claim language itself is sufficiently clear and does not require construction.

Premier's proffered constructions would improperly inject ambiguity and confusion into this straightforward claim element.  The claim language rewritten as Premier requests it to be construed follows:

<u>wherein an exterior boundary of the removable unit situated outside the lower shell defines an aperture through the width of the outer surface of the removable unit that supplies air from outside the grill and into the lower shell during cooking</u>

Further, the actual claim language at issue does not require that the "outer surface" of the removable unit be "situated outside the lower shell" as Premier proposes. Nothing in the intrinsic record contains an "expression[] of manifest exclusion or restriction, representing a clear disavowal of claim scope" that would support Premier's construction. *See Retractable Techs.*, 653 F.3d at 1306 (quoting *Epistar Corp. v. Int'l Trade Comm'n,* 566 F.3d 1321, 1335 (Fed. Cir. 2009)).

Premier's litigation inspired construction should be rejected as it does not reflect the plain and ordinary meaning of these straightforward limitations. No construction is necessary to clarify the scope of these claim elements.

**F.   "external grip for slidably removing the removable unit from the grill"**

| **Phase 2's Proposed Construction** | **Premier's Proposed Construction** |
|---|---|
| No construction required.<br><br>If the Court determines that a construction is necessary, the term should be given its plain and ordinary meaning:<br><br>"a part that is configured to permit the user to grasp and pull the removable unit out of the grill" | A handle located external to the grill when the removable unit is positioned as intended within the grill. |

This claim term appears in Claim 14, the pertinent language of which reads as follows:

> The grill of claim 1, wherein:
> …
> the removable unit comprises an **external grip for slidably removing the removable unit from the grill**
> …

The plain language of this claim element requires simply that the "removable unit" of claim 1 have an "external grip"—*i.e.* something the user can grasp—that can be used to slide the "removable unit" out of the grill. The language is clear and no construction is required. If the Court nevertheless determines that a construction is required, then Phase 2 respectfully submits that the Court should adopt Phase 2's construction: "**a part that is configured to permit the user to grasp and pull the removable unit out of the grill**."

Premier nevertheless seeks to inject additional limitations into this claim term. Specifically, Premier asks the Court to limit this "external grip" to one that is located "external to the grill when the removable unit is positioned as intended within the grill." There are no such location or temporal limitations in the claim and no basis in the intrinsic record to inject them. Indeed, the only purported justification for Premier's assertion that these limitations should be injected into the claim is that "the grip on the removable unit" in "Figs. 1, 2, 5, and 8" "extends beyond the outer

surface of the lower shell." Dkt. 39-2 at 15.  That a particular embodiment in the

'626 patent may have such a grip falls far short of an intentional disclaimer of the

plain and ordinary meaning of this claim term.  *See Cont'l Circuit.*, 915 F.3d at 979.

> **G.** **"a surface for receiving the removable unit which abuts a surface of the removable unit when the removable unit is in a closed position," "beneath a vent cover," "to cover or expose at least one portion of the at least one opening"**

| Claim Term | Phase 2's Proposed Construction | Premier's Proposed Construction |
|---|---|---|
| "a surface for receiving the removable unit which abuts a surface of the removable unit when the removable unit is in a closed position" | No construction required. Any proposed definition would simply be a reordering or restatement of plainly understood terms. | An inner wall of the lower shell touched by an outer surface of the removable unit when the removable unit is positioned within the lower shell for cooking |
| "beneath a vent cover" | No construction required. Any proposed definition would simply be a reordering or restatement of plainly understood terms. | Under a cover positioned in alignment with the opening in the outer surface of the removable unit when the removable unit is located in the lower shell |
| "to cover or expose at least one portion of the at least one opening" | No construction required. Any proposed definition would simply be a reordering or restatement of plainly understood terms. | To selectively partially cover or uncover some, all or none of the opening for providing airflow into the lower shell during cooking |

As an initial matter, these alternative limitations are not relied upon by Phase 2

to establish Premier's infringement.  Regardless, Premier requests that the Court

construe them improperly in a way that adds numerous limitations not present in the claims.

For example, for a "surface for receiving the removable unit …," Premier seeks to inject limitations related to "<u>an inner wall</u> of the lower shell touched by an <u>outer surface</u> of the removable unit."

Similarly, Premier offers a confusing construction—"Under a cover positioned in alignment with the opening in the outer surface of the removable unit when the removable unit is located in the lower shell"—of the readily understood language "beneath a vent cover."  Premier also seeks to replace simple terms such as "cover or expose" with "to selectively partially cover or uncover some, all or none."  There is simply no basis to inject all of these additional and confusing words and limitations into the claim as Premier requests.  Doing so would not reflect the plain and ordinary meaning of these readily understood terms.

## VI.   CONCLUSION

Premier's proposed claim constructions should be rejected because they seek to add improper limitations from the specification and other extraneous, unsupported limitations into the asserted claims.  The constructions proposed by Phase 2 are consistent with the patent specification and file history, as well as the plain and ordinary meaning of these claim terms, and so they should be adopted.

Dated:  October 25, 2021                Respectfully submitted,

                                        */s/Michael J. Hartley*
                                        Robert M. Evans, Jr.
                                        Bridget Hoy
                                        Michael J. Hartley
                                        Sarah L. White
                                        **LEWIS RICE LLC**
                                        600 Washington Ave, Suite 2500
                                        St. Louis, Missouri 63101-1311
                                        Tel:  314-444-7600
                                        Fax: 314-612-7837
                                        bhoy@lewisrice.com
                                        revans@lewisrice.com
                                        mhartley@lewisrice.com
                                        swhite@lewisrice.com

                                        */s/ Daniel Zegura*
                                        Daniel D. Zegura
                                        Georgia Bar No. 784822
                                        Katherine L. D'Ambrosio
                                        Georgia Bar No. 780128
                                        **RODGERS & HARDIN LLP**
                                        229 Peachtree St., N.E.
                                        2700 International Tower
                                        Atlanta, Georgia 30303
                                        Tel: 404-522-4700
                                        Fax: 404-525-2224
                                        dzegura@rh-law.com
                                        kdambrosio@rh-law.com

                                        *Attorneys for Phase 2, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, I served all parties a true and correct copy

of **PHASE 2, LLC'S OPENING CLAIM CONSTRUCTION BRIEF**, which

has been prepared using 14-point Times New Roman font, by filing same with the

clerk of court using the CM/ECF system, which will automatically send email

notification of such filing to all attorneys of record.

This 25th day of October, 2021.

/s/ *Michael J. Hartley*
Michael J. Hartley
Pro Hac Granted

## APPENDIX A

| Claim Term | Phase II's Proposed Construction |
|---|---|
| Fire Bowl<br><br>Claims 1, 4, 14, 17, 20, 22 | No construction required.<br><br>If the Court determines that a construction is necessary, the term should be given its plain and ordinary meaning:<br><br>"a vessel configured to hold charcoal or wood" |
| adapted to be spaced inwardly from the lower shell<br><br>Claim 1 | No construction required.<br><br>If the Court determines that a construction is necessary, the term should be given its plain and ordinary meaning:<br><br>"designed to be situated inside" |
| removable unit<br><br>Claims 1, 2, 14, 16, 18, 22 | No construction required.<br><br>If the Court determines that a construction is necessary, the term should be given its plain and ordinary meaning:<br><br>"a piece that can be removed" |
| outer surface of the removable unit<br><br>Claims 1, 16 | No construction required. Any proposed definition would simply be a reordering or restatement of plainly understood terms. |
| at least one opening<br><br>Claims 1, 16 | No construction required. Any proposed definition would simply be a reordering or restatement of plainly understood terms. |
| opening for providing airflow into the lower shell<br><br>Claims 1, 16, 18 | No construction required. Any proposed definition would simply be a reordering or restatement of plainly understood terms. |

| Claim Term | Phase II's Proposed Construction |
|---|---|
| during cooking<br><br>Claim 1 | The construction of this claim term is not governed 35 U.S.C. § 112(6).<br><br>No construction required. Any proposed definition would simply be a reordering or restatement of plainly understood terms. |
| a surface for receiving the removable unit which abuts a surface of the removable unit when the removable unit is in a closed position<br><br>Claim 14 | No construction required. Any proposed definition would simply be a reordering or restatement of plainly understood terms.<br><br>Phase 2 is not relying on this alternative limitation of claim 14 to establish infringement |
| external grip for slidably removing the removable unit from the grill<br><br>Claim 14 | No construction required.<br><br>If the Court determines that a construction is necessary, the term should be given its plain and ordinary meaning:<br><br>"a part that is configured to permit the user to grasp and pull the removable unit out of the grill" |
| beneath a vent cover<br><br>Claim 16 | No construction required. Any proposed definition would simply be a reordering or restatement of plainly understood terms.<br><br>Phase 2 is not relying on this alternative limitation of claim 16 to establish infringement |

| Claim Term | Phase II's Proposed Construction |
|---|---|
| to cover or expose at least one portion of the at least one opening<br><br>Claim 16 | No construction required. Any proposed definition would simply be a reordering or restatement of plainly understood terms.<br><br>Phase 2 is not relying on this alternative limitation of claim 16 to establish infringement |